AO88 (Rev. 1296) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ GEORGIA

**SUBPOENA IN A CIVIL CASE**

V.

Case Number:[1]

TO:  Earthlink Legal Department/Subpoena Compliance
     1375 Peachtree Street, N.W., Level A
     Atlanta, GA 30309

# 1 07-MI · 0097

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Name and contact information in your custody/control related to the IP address 24.148.196.45, which was used at 16:45:00 PDT on July 31, 2006, to post material on www.tabandbrandy.blogspot.com that infringed the National Conference of Bar Examiners' copyrights to Multistate Bar Examination questions from the July 2006 exam (see Ex. 1).

| PLACE | Fulbright & Jaworski L.L.P., 801 Pennsylvania Avenue NW, Washington, D.C. 20004 | DATE AND TIME 5/14/2007 12:00 pm |
|---|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| JAMES N. HATTEN | 12 APR 2007 |

United States District Court
2211 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303

PHONE NUMBER

Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

CAROLINE M. MEW
SENIOR ASSOCIATE
CMEW@FULBRIGHT.COM

DIRECT DIAL:   (202) 662-4753
TELEPHONE:   (202) 662-0200
FACSIMILE:   (202) 662-4643

April 9, 2007

**VIA FEDERAL EXPRESS**

Earthlink Legal Dept./Subpoena Compliance
Earthlink, Inc.
1375 Peachtree Street, NW
Level A
Atlanta, Georgia 30309

Re:   Request for assistance re posting of infringing material on blogger.com

Dear Sir or Madam:

Pursuant to the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, I am writing to request your assistance in identifying the individual or individuals who posted copyrighted questions from the July 2006 Multistate Bar Examination on www.tabandbrandy.blogspot.com.

Our firm represents the National Conference of Bar Examiners (NCBE). NCBE develops several exams that are used by the various jurisdictions as part of their bar exam process, including the Multistate Bar Examination (MBE).

Individuals who take the MBE are instructed that (1) MBE questions are confidential and copyrighted, and (2) they should not disclose MBE questions to third parties after taking the exam, in any format. I have attached at Tab A a sample MBE cover page which reflects these instructions. The principal reason for this non-disclosure requirement is to protect the integrity of the bar examination process: questions on the MBE are re-used on future versions of the exam, in order to equate exam scores (i.e., to make sure that scores on different forms of the exam can be meaningfully compared to one another). Because questions are re-used, it is important that secure questions from a given administration of the MBE not be disclosed to prospective examinees. See generally NCBE v. Multistate Legal Studies, Inc., 2006 U.S. Dist. LEXIS 59477, Copy. L. Rep. (CCH) ¶ 29,233 (E.D. Pa. 2006); NCBE v. Saccuzzo, 2003 WL 2146772 (S.D. Cal. 2003).

NCBE recently discovered a blog on which one or more individuals who took the bar exam in July 2006 were posting copyrighted MBE questions from that exam. The blog is found at www.tabandbrandy.blogspot.com. I have included at Tab B the pages from the blog that show

31309360.1

HOUSTON • NEW YORK • WASHINGTON DC • AUSTIN • DALLAS • LOS ANGELES • MINNEAPOLIS • SAN ANTONIO • ST. LOUIS
DUBAI • HONG KONG • LONDON • MUNICH • RIYADH

April 9, 2007
Page 2

the infringing questions. The person who set up this blog has since removed the questions, after being contacted by her state Board of Law Examiners. She has informed us that she did not post the questions, she does not know who did, and she does not have any contact information for the individual or individuals who posted the MBE questions.

Specifically, we are seeking the identity of the individual who posted the following post:

"Anonymous" on July 31, 2006 at 4:45 p.m. PDT

Through a subpoena issued to Google pursuant to the DMCA, we were able to identify the IP address of the individual who posted these infringing entries – 24.148.196.45. It is our understanding that this IP address is owned by Earthlink.

We are requesting your assistance in providing the name and all contact information in your custody or control related to the IP address 24.148.196.45, which was used at 16:45:00 PDT on July 31, 2006, to make the infringing post to www.tabandbrandy.blogspot.com. Pursuant to the DMCA, written notice of the copyright violation is a prerequisite to issuing a subpoena. Accordingly, we are submitting this written notice to you, and a subpoena will follow shortly. We agree to EarthLink's terms of compensation ($75.00/hour for research, $0.25 per page, $22.00 to respond by Federal Express).

The use of the copyrighted materials described above on the allegedly infringing blog pages was not authorized by NCBE, the copyright owner, or by any agent of NCBE. I have a good faith belief that the use of the copyrighted materials described above was not otherwise authorized by the law. I swear, under penalty of perjury, that the information in this notification is accurate to the best of my knowledge, and that I am authorized to act on behalf of NCBE, the owner of the exclusive rights that have allegedly been infringed.

Thank you in advance for your prompt response to this request.

Very truly yours,

Caroline M. Mew

Enclosures

# TAB A

**Applicant Identification**



# THE MBE

## MULTISTATE BAR EXAMINATION

By breaking the seal on this test booklet, I certify that my purpose in taking the Multistate Bar Examination (MBE) is for admission to the bar in the jurisdiction in which I am taking this examination and for no other purpose.

By breaking the seal on this test booklet, I further affirm and agree that I will not copy or otherwise reproduce any examination questions or answers onto material to be taken from this examination room. Likewise, I will not disclose - in whole or in part - any MBE questions or answers to any party during or after the examination, whether orally, in writing, electronically, or otherwise. I recognize and acknowledge that the MBE is a secure examination protected by U.S. copyright laws, and that any unauthorized disclosure of its contents could result in civil liability, criminal penalties, cancellation of my test scores, denial of my bar application on character and fitness grounds, and/or disciplinary action if I have been admitted to practice law.

## Read the directions on the back cover.
## Do not break the seal until you are told to do so.



NATIONAL CONFERENCE OF BAR EXAMINERS

Copyright © 2006 by National Conference of Bar Examiners.
All rights reserved.

# TAB B

[e] Blogger] | [SEARCH ALL BLOGS] BlogThis!   [SEARCH THIS BLOG]   [GET YOUR OWN BLOG] [FLAG?] [NEXT BLOG»]

# TAB AND BRANDY

867-5309

**WEDNESDAY, JULY 26, 2006**

## Day Two: It Blew

I don't like the MBE, and the MBE doesn't like me.

I'm not feeling great about today. First of all, I had a horrible time sleeping because of really loud music. I complained to the front desk to no avail. I don't know what time it stopped, but the last time I looked at the clock before I fell asleep, it was 1:30.

And second of all, well, I thought the MBE was hard. (Maybe I'm the only one. There were some people braying afterward about how OVERHYPED and EASY it was.)

The funny thing is, there weren't that many really long crazy fact patterns like I had been led to believe there would be, but those short-fact-pattern questions were awfully tricky. There were many (many many) where I really had no clue as between two possible choices and just had to pick one.

Blah. Y'all will still love me even if I don't pass, right? Right?

Oh well. Time to put it out of my mind and get going on studying for tomorrow...the hardest day of all. :(

POSTED BY TAB CONNOISSEUR AT 4:45 PM

**39 COMMENTS:**

Frolics and Detours said...

I thought the MBE was hard. I was pretty much able to narrow

---

**ABOUT ME**



**TAB CONNOISSEUR
TEXAS**

VIEW MY COMPLETE PROFILE



Why Tab?

Why Should You Fear People Taking the Bar?

**PREVIOUS POSTS**

Joy to the World

Que?

Day One, Not So Fun

Antici--

Fun for Shut-Ins

Into the Breach

Zen

Accountants Suck

Daily Affirmation

Discovery Rule At Work

most of the answers down to two choices and then guess. There were some that I had NOOOOOO clue about and were just random guesses as well.



I know for a fact I got 5 right and 2 wrong. The other 193 are up in the air.

Good luck tomorrow.

7/26/2006 7:18 PM

collateral evidence said...

If it's of any consolation, people I was talking to here in Oregon were bemoaning how few MBE answers they felt really certain about, and saying how hard it was. I was one of them. It blew. Best wishes for tomorrow!

7/26/2006 7:19 PM

Tab Connoisseur said...

Thanks, y'all. That makes me feel somewhat better.

Of course, and I didn't really want to write about this in the main post, but I think I have a touch of food poisoning (my brother stopped by with a funnel cake from the ballpark last night...yay funnel cake, boo feeling like you're going to die all morning long). So that made the whole process really really really fun. No details, but...yeah.

If I end up failing this thing because of the MBE, at least I'll know why. :-P

7/26/2006 7:26 PM

feithline said...

I also thought it was a ball of pure evil. Hooray for the curve!

In re: food poisoning, I had it at the opera once, which I think is possibly the second worse place after the bar exam, so I can imagine how you must have felt. Two words: clear fluids!

7/26/2006 8:18 PM

itmfa said...

I thought it was hard, as well! And I was looking forward to the MBE as the easier part of the test...

7/26/2006 10:36 PM

ambimb said...

Yeah, the MBE blew. And maybe you had a different test than me but the afternoon was like 100% superlong fact patterns that took forever to read and at the end of each one were two choices that both looked absolutely like the right answer. I hate hate hated it. It kicked and pummeled me until I could no longer even see straight. And I don't even have anything like lack of sleep, food poisoning, or anything else to blame it on -- it just blew!

It makes me feel slightly better to know that other people thought it sucked, too, so I hope you get some comfort knowing you're in such, um, *good* company. ;-)

7/26/2006 10:59 PM

Jocelyn Smith said...

Best of luck today. I agree, the MBE was brutal. I still thought I did reasonably well--problem is I don't know whether it was enough. And the Florida General Bar on Tuesday was absolute hell; the essays were better than expected, but the multiple choice was a beast. I had maybe 10 of the 100 questions that I felt sure of.

I thought I'd dance out the door when it was done, but I'm half-convinced that I failed, and now just feeling depressed. Bleh. I guess this is probably normal post-Bar letdown.

7/27/2006 2:08 PM

Anonymous said...

I took the MBE in Ohio yesterday, and I thought it was really hard - much harder than any of the Barbri or PMBR practice problems. Luckily, everyone I spoke to felt the same way, so I suspect the scaled score will be very generous. At least I hope

so....

**7/27/2006 4:18 PM**

Tab Connoisseur said...

Hm, well, hindsight isn't making it look any better. It really truly was that bad.

The best thing? There was this real property question in which a deed had the incorrect description of the parcel. I didn't know how to answer it. Guessed, no clue. Contract merges into deed, but...?

But I forgot all about it. So there I am today, opening up my real property essay...and just guess what the question is. Ha ha, I still don't know the answer. :-P

**7/27/2006 6:12 PM**

Jocelyn Smith said...

I kept flubbing the same damn Evidence questions on both the Florida and MBE multiple choice. Argh.

**7/27/2006 7:59 PM**

Anonymous said...

I agree with everyone here. The MBE was really difficult. It was all a blur to me now. I don't remember anything from it which even makes me more scared! I thought the time before the exam was tough. Now, I think the time after exam waiting for the result may not be that easy neither.

**7/27/2006 9:33 PM**

Anonymous said...

The MBE completely bitchslapped me. I was doing really well on all of my practice sets so I figured I'd pass, no problem.

Right. That sucked. I'm pretty sure I failed it. It does make me feel somewhat better that almost all of my friends (who are very smart and studied very hard) also thought it was awful, but still.

Jesus.

7/27/2006 9:37 PM

Anonymous said...

OUCH.....the 1st part was managible I thought as far as ok well there is allot I don't know here but I can still try to pretend that everything is OK! THEN the After-noon session -WHAT THE HELL?

There where things on their I am sure just refered to single crazy and isolated case law! What the hell are they testing for?

7/28/2006 4:23 AM

Gnome da Ploom said...

I thought the MBE was probably the hardest part of the exam, particularly the afternoon portion. There was a fair amount of stuff on there that I wish there was a fifth option: E) That wasn't covered in BarBri.

7/28/2006 8:52 AM

Tab Connoisseur said...

I agree that the MBE was the worst part of the exam. I didn't think the morning was that easy, either, although that was also the part of the exam where I had to keep, ahem, getting up. I was just happy that I finished on time in the morning.

7/28/2006 2:25 PM

Anonymous said...

I am with you all! The MBE kicked my a$$. Praying for the curve, hoping for a lot of lucky guesses and knowing that if there is a next time, I will concentrate on the PMBR practice questions than the Barbri ones.

I did laugh though because there was an evidence 403 question on there and I could not for the life of me remember if the standard was "outweighed" or "substantially outweighed" - luckily, the bar examiners supplied that answer in another answer choice about 50 questions later. I think that one was right - unless of course the answer had nothing to do with 403 and I

am WAY out of the ballpark!! hahaha! Best of luck to you all! At
least it's OVER!

7/28/2006 8:34 PM

Tab Connoisseur said...

I remember that question. I think I said "substantially." Don't tell
me if I was wrong. I do not care.

I did focus more on PMBR than BarBri, and I don't think it
helped. The PMBR questions tend more toward the "question
that runs for a page and half" variety, and they're HARD, but
eventually, after much studying and practice, I could do them. I
was even doing well. I thought I was all set for the MBE. That was
my "easy" day, where I could relax before the drawing and
quartering of the essays. HA HA HA HA HA HA HA.

7/28/2006 9:25 PM

Anonymous said...

so did we all take the same MBE exams? did some of us take the
morning exam while some took the afternoon and vice versa?
cause i thought the afternoon exam was much more difficult and
i want to make sure that we all took the same half during the
same segment of the exam....

7/28/2006 10:42 PM

youmockamee said...

ok, for me, there was a question in the afternoon
session...something like #192, that was all about whether some
congressional act giving some agency secretary something or
another was a valid act...and all the answer choices were about a
page long...i actually laughed. i heard that PMBR tells you to do
the last 10 questions first--which i didn't. when i got to those 10
questions, i just kept thinking, "wow, the bar examiners are out
to fuck us...they know our secrets, and they don't like it at all."

7/29/2006 1:57 AM

Anonymous said...

I thought the afternoon MBE was terrible! The morning session was similar to other released exams but the afternoon just killed me. I am depressed now....

7/29/2006 2:29 AM

Tab Connoisseur said...

I think we all took the same parts of the MBE at the same time. Camel-hair coat, father who teaches his son how to play Russian roulette and chug beer, you know the rest. The widespread consensus is that the afternoon session was far more difficult, which leads me to believe we had the same sections in the morning and afternoon across the country.

Yournock...I wish I had heard that advice. Or not. I dunno. I managed to finish on time anyway. And I think pretty much the whole afternoon pummeled me, not just the last few questions. Ugh.

(Maybe it will be easier in February. Ugh^2)

7/29/2006 3:09 AM

Anonymous said...

why didnt PMBR or BAR/BRI tell us that the bar examiners added another topic to the MBE portion of the bar exam (i.e. Wills)???

7/29/2006 5:49 AM

Anonymous said...

i highly doubt that some took the morning exam while others took the afternoon exam. i personally think that would be unfair on the part of the examiners. if that was the case, the answers could have been easily been given away during the lunch break. i also heard many students say that some students had different booklet numbers but i really believe that we were all given the same questions during both segments of the MBE.

7/29/2006 5:53 AM

ResourceGirl said...

Please check out my post on my blog. You may have done much better than you realize!

http://resourcegirl.blogspot.com/

7/29/2006 7:13 PM

Anonymous said...

wait ... I was screwed by the morning MBE, not the afternoon. I just assumed they gave different sections ... b/c the guys behind me felt fine about the morning and screwed in the afteroon. My morning section started right off with a really hard property and then a hard contracts ... I thought, "are you kidding me?" and then the afternoon was more straightforward.

I *hope* they mixed it up a bit ... otherwise I might be in more trouble than I though!

7/30/2006 12:22 PM

Tab Connoisseur said...

Anon, I can't remember which questions appeared in which part of the day — maybe somebody else does and you could compare?

But I wouldn't freak out yet. It's definitely possible that the sections were switched, or that you just happened to be better prepared for the types of questions that appeared in the afternoon.

The only time I'd really worry would be if you didn't do so great on practice tests but thought the MBE was super-easy....

7/30/2006 1:48 PM

The King of New Orleans said...

Theories about why the bar exam was so hard:

(1) Population control. NCBE (and maybe the states) think there are too many lawyers out there.

(2) Anger over bar review courses (particularly PMBR) over their

conduct (taking the test simply to find out hints, Feinberg
allegedly trying to walk out with notes, etc.). Perhaps the
examiners felt obligated to come up with questions PMBR and
BarBri had never even considered.

7/30/2006 5:49 PM

Anonymous said...

I took the MBE in Hawaii, and yes, EVERYONE that I spoke with
about it so far agrees that the afternoon sessions was just insane.
I felt confident about maybe 5 of my answers out of 200.

What was the deal with that question regarding the exclusion of a
witness and the representative? I had no idea what that question
was even asking!

7/30/2006 6:18 PM

Chris said...

Yeah, the MBE kicked my ass. The afternoon session was a lot
harder than the morning. All those torts questions asking about
directed verdicts killed me!!! And was it just me or did they ask a
ton of questions on the president's executive powers and only 1
question on level of scrutiny.

7/31/2006 6:38 PM

Anonymous said...

These questions were in the morning for me in Wisconsin.
1) A sets up with B a fraudulent scheme at a county fair by setting
up a booth and defrauds a number of people who approach the
booth. Another person, C, who notices this action sends a hated
teacher of C's to the booth in order to be defrauded. Also, a
fourth person, D, merely sent another over to the booth and that
person was defrauded for $50. The call of the question stated the
four A, B, C, D and what each is liable for.
2) Is D liable for fraud due to his sending a person over to the
booth, even though he didn't know of the scheme?
a. Accessory after the fact for C, because he had the intent and
knew about the scheme.
b. No accessory after the fact for D ( was a two part question)

3) A person throws a brick through a car windshield and four different circumstances attempt to nullify the voluntary act itself. One was a person who was sleepwalking and did this, one was on some medication while doing it, another was retaliating in some manner which was not the right answer, the final circumstance escapes me, but I picked the sleepwalker as negating the voluntary act.

4) Something about the Federal Gov. regulating the licking of a glowing toad to get high. This was a federal question.

5) May a mortgage be taken by a devisee (defesible) in vested fee simple then mortgage the interest to a church, during the time when the church is being used "for church purposes." I thought one could not mortgage a future interest which is not vested? Dunno.

6) Evidence question about the statement "the son of a bitch is a dead man" the witness is testifying as to whether this statement is an excited utterance- not b/c not for the truth of the matter asserted, but could have been a present sense impression. That is what I picked.

7) Double jeopardy question was whether after the first trial for armed robbery, when found not guilty, may be tried again for assault, but the second trial had not begun because the jury had not been sworn in yet, but it is still double jeopardy. Because the same elements of the crime have already been tried in the first armed robbery trial.

8) An office worker turns in another worker for possession of cocaine in the office. The worker is arrested and charged, but wins the trial for possession charge. Then, the worker that turned him in has her office subjected to civil forfeiture under the drug laws on which the underlying offense was apparently beaten on the first trial, thus this is a hybrid double jeopardy question, which would have made for an interesting essay question, but I answered it as being allowed due to the civil nature of the proceedings are not seemingly duplicative enough to be subject to a double jeopardy dismissal.

9) In a requirements contract, the words "required" are mistakenly replaced with the word desired which subjects this contract to matters of mutual mistake, thereby allowing for this contract to be subject to reformation with the mutually

reciprocating terms as desired as REQUIRED, thereby.

10) One painter negotiates to paint for an amount which includes the trim, a valued amount of $400 less than the contract amount. The painter is allowed an opportunity to paint the trim, but does not, therefore, I believe that the owner is permitted to deduct the $400 from the value of the contract, as it appears they both intended for this to be inclusive of the trim. Therefore, I selected an amount of the contract which subtracted the $400. I think this was permissible because there was no question as to the inclusion of the trim.

11) The teaching of evolution in school was, in my view invoking the establishment clause and therefore was applied the compelling interest test in order to permit the teaching of such a subject in a public school setting. The answers were either rational basis or compelling, and I picked compelling under establishment clause principles.

12) There was an undercover cop who 'participated' in a conspiracy to purchase stolen guns. The seller of the stolen guns got away, thus the cop could not have completed the necessary elements for a conspiracy, thus whatever answer I picked did not have a conspiracy crime in it.

13) Julia is staying in a hotel as a guest. A 'federal' police officer determines that she is alleged to have participated in a bank robbery two weeks prior. Without a warrant and without 'required probable cause' the officer uses the master key from the manager of the Hotel to enter Julia's room, where he finds nothing except a diary on the bed, which Officer reads and learns that it was in fact, according to the diary, Julia who committed the crime. Question is whether this diary is admissible, or maybe whether her arrest based on the contents of the diary is permissible.

14) Mother says to Sam, please give my son $1000, and "I will pay you back if he doesn't" and sends the letter. Sam gets the letter and drafts a letter accepting the request, but does not mail the acceptance until Mother dies. Son gets the $1000, and question is whether mother's estate is liable for the $1000.

15) A company is contracted to produce a large number of unique metal placquards each custom made with the company's logo on them. The contract is breached and the answers reflect what the

damages are and the only two that are possibly right are, the "full
value of the contract" or the cost to the company for producing
the products.

7/31/2006 6:45 PM

Tab Connoisseur said...

Er...Anon...how the heck did you remember all that?????

(Psst...are you a rep for PMBR? Did you sneak those out?)

And yes, those are the questions I had in the morning.

7/31/2006 6:56 PM

Anonymous said...

guys this may be off topic but i know of now other forum where
such a question can be answered. On the CA performance exam B
what were the format guidlines for the opinon letter. I am
wondering if i did mine right.

8/01/2006 3:51 PM

Tab Connoisseur said...

California Anonymous:

You might check out this site. The person who runs it took the
California bar, and there are several links on the sidebar to other
people who took the bar, many in California.

I can tell you what the MPT standards for an opinion letter would
be (as per BarBri), but to the extent that California wanted
something different, I'm afraid I've got nuthin'.

8/01/2006 4:03 PM

Anonymous said...

Here are all 41 questions on the MBE that I could remember. I
am not a rep, I simply spoke at my wife for three hours driving to
the airport after the Bar, and she took notes while I gabbed. So,
Here are the questions and my proposed answers. Anybody

remember more than these? or can elaborate?

1) A sets up with B a fraudulent scheme at a county fair by setting up a booth and defrauds a number of people who approach the booth. Another person, C, who notices this action sends a hated teacher of C's to the booth in order to be defrauded. Also, a fourth person, D, merely sent another over to the booth and that person was defrauded for $50. The call of the question stated the four A, B, C, D and what each is liable for.

2) Is D liable for fraud due to his sending a person over to the booth, even though he didn't know of the scheme?

a. Accessory after the fact for C, because he had the intent and knew about the scheme.

b. No accessory after the fact for D ( was a two part question)

3) A person throws a brick through a car windshield and four different circumstances attempt to nullify the voluntary act itself. One was a person who was sleepwalking and did this, one was on some medication while doing it, another was retaliating in some manner which was not the right answer, the final circumstance escapes me, but I picked the sleepwalker as negating the voluntary act.

4) Something about the Federal Gov. regulating the licking of a glowing toad to get high. This was a federal question.

5) May a mortgage be taken by a devisee (defesible) in vested fee simple then mortgage the interest to a church, during the time when the church is being used "for church purposes." I thought one could not mortgage a future interest which is not vested? Dunno.

6) Evidence question about the statement "the son of a bitch is a dead man" the witness is testifying as to whether this statement is an excited utterance- not b/c not for the truth of the matter asserted, but could have been a present sense impression. That is what I picked.

7) Another evidentiary question about whom shall be excluded from the courtroom during the proceedings, including (or not) the witnesses' representative. Rule 615 prohibits the exclusion of an employee or assistant to a witness from being prevented from presence but does not specifically preclude or allow an attorney of such witness from presence in the courtroom. This was a viscous question of little or no real value.

8) Double jeopardy question was whether after the first trial for armed robbery, when found not guilty, may be tried again for assault, but the second trial had not begun because the jury had not been sworn in yet, but it is still double jeopardy. Because the same elements of the crime have already been tried in the first armed robbery trial.

9) An office worker turns in another worker for possession of cocaine in the office. The worker is arrested and charged, but wins the trial for possession charge. Then, the worker that turned him in has her office subjected to civil forfeiture under the drug laws on which the underlying offense was apparently beaten on the first trial, thus this is a hybrid double jeopardy question, which would have made for an interesting essay question, but I answered it as being allowed due to the civil nature of the proceedings are not seemingly duplicative enough to be subject to a double jeopardy dismissal.

10) In a requirements contract, the words "required" are mistakenly replaced with the word desired which subjects this contract to matters of mutual mistake, thereby allowing for this contract to be subject to reformation with the mutually reciprocating terms as desired as REQUIRED, thereby.

11) One painter negotiates to paint for an amount which includes the trim, a valued amount of $400 less than the contract amount. The painter is allowed an opportunity to paint the trim, but does not, therefore, I believe that the owner is permitted to deduct the $400 from the value of the contract, as it appears they both intended for this to be inclusive of the trim. Therefore, I selected an amount of the contract which subtracted the $400. I think this was permissible because there was no question as to the inclusion of the trim.

12) The teaching of evolution in school was, in my view invoking the establishment clause and therefore was applied the compelling interest test in order to permit the teaching of such a subject in a public school setting. The answers were either rational basis or compelling, and I picked compelling under establishment clause principles.

13) There was an undercover cop who 'participated' in a conspiracy to purchase stolen guns. The seller of the stolen guns got away, thus the cop could not have completed the necessary

elements for a conspiracy, thus whatever answer I picked did not
have a conspiracy crime in it.

14) Julia is staying in a hotel as a guest. A 'federal' police officer
determines that she is alleged to have participated in a bank
robbery two weeks prior. Without a warrant and without
'required probable cause' the officer uses the master key from the
manager of the Hotel to enter Julia's room, where he finds
nothing except a diary on the bed, which Officer reads and learns
that it was in fact, according to the diary, Julia who committed
the crime. Question is whether this diary is admissible, or maybe
whether her arrest based on the contents of the diary is
permissible.

15) Mother says to Sam, please give my son $1000, and "I will
pay you back if he doesn't" and sends the letter. Sam gets the
letter and drafts a letter accepting the request, but does not mail
the acceptance until Mother dies. Son gets the $1000, and
question is whether mother's estate is liable for the $1000.

16) A company is contracted to produce a large number of unique
metal placquards each custom made with the company's logo on
them. The contract is breached and the answers reflect what the
damages are and the only two that are possibly right are, the "full
value of the contract" or the cost to the company for producing
the products.

17) Congress passes a law which effectively makes a portion of
contracts with the government invalid, one of the answers
mentions ex post facto law violation, another answer states that
ex post facto laws only pertain to criminal actions not civil ones.

18) Congress passes a law which full states that it will regulate in
every manner the sounds emanating from everywhere, stating
the protection of human's hearing and 'noise pollution' being the
reason for Congress' entry into this field of regulation. It also
states that "any city or state government which has not passed
such regulation will be subject to a noise decibel level of 80 db as
the standard for all. Then, three weeks later a city passes a law
which sets the db level at 70 db. The question choices ask
whether the city law is constitutional, or unconstitutional
because, "Congress sought to fully occupy this field of
regulation-"sound", or that the city may pass laws which are
more restrictive than the Congressional version.

19) In a certain state, based upon the new census, re-districting was begun. Due to the political wrangling which went on while attempting to implement the redistricting, the Federal Courts were petitioned to come to a decision on the correct apportionment of people in each district. The answers were sometimes three sentences long, one stating that the Eleventh Amendment did not allow the Federal Courts to decide states issues; another stated that members in those districts have one-person, one-vote rights which make this a Federally justifiable, matter.

20) A plaintiff files an action to sue in a diversity action in federal court when the amount in controversy is $60,000, which at the time was in the process of being amended to be higher than the $50,000 which is was at the time of his filing the case. Then, the amount in controversy was changed by Congress to be $100,000, making his case not valuable enough for a diversity action. Does this change make his case fail on the merits or is it saved by the prior filing if there was no mention of a sunset provision, etc. The answers were time of injury, time of filing and time of change in the amount of controversy.

21) Mortgage priority question had to do with whether in a race notice jurisdiction, a "purchase money mortgage" has higher priority than a "homeowner's mortgage" as opposed to a "commercial mortgage." One of the answers outright stated, because homeowner's mortgages have first priority over commercial mortgages.

22) An owner sells her home to Buyer and gives him a mortgage for $40,000 in order to complete the deal. Buyer uses another 'commercial mortgage' in order to obtain money for his 'home business' and this mortgage is around $80,000, again Buyer defaults, neither mortgage is recorded, and one answer again states that homeowner mortgages are higher priority than a commercial lease. Another answer states because the homeowners' mortgages have priority over commercial mortgages? Never heard of such a thing.

23) Two part question, Clara finds out from her boyfriend that there is a gift of an expensive jacket in her closet at home. Clara has an idea to "steal" jacket by giving it to Margaret, then after 'stealing' her own gift, calls Margaret to tell her that it would be

funny to her boyfriend when she finds out that her gift was
stolen. The two questions asked what crime is Clara guilty of, and
because she had 'stolen' her own possession, she could only be
guilty of conspiracy and solicitation. Margaret, on the other
question, can be guilty of only conspiracy and larceny because
solicitation merges and cannot be charged. Tough!

24) A woman hires a hit man for $10,000 to kill, a boyfriend /
spouse? And pays him the $10,000, however the hit man shoots
and misses, but the boyfriend? Then falls and dies because of the
fall, hitting a rock, and not by the shot. The question is whether
she is guilty of murder or only attempted murder and or
solicitation. The real question had to do with whether criminal
impossibility as opposed to legal impossibility will negate the
attempt part.

25) Then there was a parent who discovered on the breath of her
son alcohol, yet still gave him the keys to her newer car, because
the son convinced her that his car was less safe. An accident
occurs in which no one is killed, but the question has to do
whether the mother can be successfully charged with "attempted
murder" "attempted involuntary manslaughter" attempted
voluntary manslaughter" or no attempt crime. I struggled with
this one, because I knew there was no such thing as an attempted
negligence based crime, nor an attempted reckless based crime,
thus I really have no idea what they were looking for here.

26) May two contracting parties specifically draft "a specific
performance clause" into a contract in order to force a court to
order SP on the construction of a building to be completed when
only 60% of is was completed? Here, one reasonable answer
which I picked stated that a contract cannot impose a court to
order specific performance in a contract. The other answers were
not sound, and did not address the issue of forcing a party to
complete performance on a contract when damages may suffice
as compensation for a breach.

27) When an architect purposely and lacking good faith delays
the issuance of a specific element of a contract, here it was the
certification from the architect, thereby forcing a breach for
which a condition precedent was not fulfilled due to the parties
failure to certify, thereby lacking good faith dealing. I steered
clear from any enforceability issues in answering this one,

because each element of the contract was fulfilled save the
architect cert. clause which thereby breached the contract. This
was unclear and unfair as a question.

28) Sarah wanted an attorney appointed due to her indigent
status, but she requested a "Johnny Concran" type defense
attorney, and was otherwise appointed a public defender. The
judge appointed this public defender on the stated basis that
Sarah "could not defend herself, competently." Later, Sarah fires
her public defender and completes her trial on her own, only to
be found guilty of murder and sentenced to 30 years in prison.
On appeal, may she be successful in overturning her guilty
finding due to failure of competent counsel, due to the fact that
early on the judge stated on the record that she was "incompetent
to defend herself." I found none of the answers addressing the
issue how may a defendant competently waive her right to
counsel. Tough one.

29) One element of sentencing guidelines in a trial for stealing
books is whether the book stolen was a book on the "NY Times
Best Seller top Ten" list, which if so found to be on that list,
would be mandatory sentence of one year, where normally, the
sentence for regular books would be 0-5 years. One man was
reluctantly sentenced to 1 year because the book was found to on
that list. I forgot the answers but it was whether the sentencing
guidelines are constitutional or not. I thought that the question
would be about judicial notice.

30) A judge took judicial notice of the important fact as to
whether the bank robbed was an FDIC bank or not, and this led
to jury instructions which stated that a jury "may" find this fact
irrefutable because it was a criminal trial. Nailed that one

31) If a change in the contributory negligence statutes of a state
was initiated which one of the following would least be impacted:
assumption of the risk, last clear chance, contribution and
reimbursement, comparative negligence. I picked assumption of
the risk.

32) Another x the gasoline prices strange con law question had to
do with whether a state may fix the prices for gas based upon the
prices of the adjoining four states. I stated the commerce clause
answer whatever that was.

33) There is a generator sold in a sealed package from a store.

The store from which it was sold, sells the item sealed, in an "as is" condition. On the outside, states it handles 1000 watts but in reality, it is only 500 watts. The breach of merchantability is something that cannot be waived, at least that is what I put.

34) A person is speeding way over the speed limit when one of the brakes on a car cause a crash, but no injury, the defective brakes caused only damage to the car. The answers all had to do with whether the jurisdiction allows for fixing defective products, after found defective, or whether the damage is not something that a jurisdiction would allow to be fixed as a remedy.

35) Two questions tried to determine whether a government report is an exception to the hearsay rule, like a business records type of exception. Yet, all the answers pointed to the "government report" as being an exception to the hearsay rule out-right. I am thinking this was a trick. Both times.

36) Can the growing of crops on a farm which is not yours be the evidence necessary for adverse possession? There was no notice to the true owner of the land, and owner of the adjacent plot was using it to grow crops. Does this act amount to a hostile undertaking for purposes of adverse possession?

37) Is burning hot oil next to a high school considered an abnormally dangerous activity when a plane crashes into the oil burning plant, causing harm to several students? Here, I think this was an unforeseeable act and due to the fact that the plant had adequate security and was only on a hill was the only real reason for finding them negligent, if not found to be an abnormally dangerous activity.

38) Man in a plane parachutes to safety, causing no damage, but the owners want to "sue him" anyway for an undisclosed cause of action. This is most likely testing private necessity, and I put that they could not have a cause of action unless he caused damage.

39) Is a forest ranger on Federal land subject to state taxes for her income? This was one strange question which I thought to be a federalism question which would not allow a state to tax a federal land worker. I may be wrong.

40) A judge gave two extremely narrowly written reasonable doubt jury instructions which at most favored the defendant in the sense that it characterized reasonable doubt in very specific terms, but the Defendant was found guilty anyway and was

sentenced to many years. The question is whether this question is
appeal able if the jury instructions are more favorable to the
defendant than the prosecution.

41) Whether the evidence standard is was "outweighed" or
"substantially outweighed" I know that one was substantially
outweighed.

**8/01/2006 6:11 PM**

Anonymous said...

you left out my favorite question - for some reason (probably
lightheadedness) this question totally cracked me up. it was
about 400-pound elks, and under what scenario someone would
be guilty of attempt with regard to a statute forbidding the
shooting of elks under 400 pounds (or maybe it was elks over
400 pounds? who knows.). anyway, the options were a guy who
shoots a lighter elk thinking it's a heavier elk, a guy who shoots a
heavier elk thinking it's a lighter elk, a guy who shoots a moose
thinking it's an elk, and a guy who shoots an elk thinking it's a
moose. or something along those lines. i just remember reading
the question and having this out of body experience, wondering
to myself how it is that of all the paths in my life, i somehow
picked the one that required me to figure out how to legally shoot
an elk.

**8/02/2006 7:49 PM**

Tab Connoisseur said...

Oh, yes, the elk question.

Okay, I will grant people this. I saw several SIMILAR questions
on practice tests, although they usually involved illegal drugs (ex:
D thought it was illegal but it wasn't, D thought he had more than
the prohibited amount but he didn't, etc.). Even so, I still wasn't
sure about the answer to that one.

**8/02/2006 8:42 PM**

Anonymous said...

I took the Arkansas bar and was getting around 70% accuracy on
the 1500 PMBR questions I did plus another 500 on

Tab and Brandy: Day Two: It Blew          file://C:\Documents%20and%20Settings\smiley\Local%20Settings\...

Case 1:07-mi-00097     Document 1     Filed 04/12/2007     Page 28 of 29

Adaptibar......that MBE was spawned in Hell. I pray for a
generous curve.

I do feel somewhat better after surfing the Internet to see that
pretty much everyone thinks it was over-the-top hard.

8/05/2006 11:32 PM

Tab Connoisseur said...

Anon-

You're not imagining things. It really was that hard. I find that
the oblivion that raging acoholism can provide helps a great deal.
I highly recommend it.

8/07/2006 5:03 AM

Anonymous said...

fyi

half exam takers had tests in booklets 15 and half had tests in
booklets 26. you are seated every other person 15-26-15-26. 15
and 26 alternate the morning and afternoon portions. so you
can't look at your seatmates answer sheet and just cheat off of the
numbers. sure you could tell someone at lunch that they should
look at certain areas of law but can you really remember the
wording of enough questions and answers and guarantee you
chose the right answer (without missing any issues) that you
could really successfully cheat enough to affect whether you pass
or don't pass the bar? i don't think so. neither do the examiners.
its a safer system then having everyone writing the same pattern
on their answer sheets at the same time.

the morning was hardest for me. i think i was a 26 but now i can't
remember! ha!

8/08/2006 8:36 PM

POST A COMMENT

<< Home



10/5/2006 12:03 PM